IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTOINE SPANN,<br>          Plaintiff,<br><br>v.<br><br>SUPREME COURT OF<br>PENNSYLVANIA, DEPUTY<br>PROTHONOTARY, *et al.*,<br>          Defendants. | :<br>:<br>:<br>:   CIVIL NO. 23-1566<br>:<br>:<br>:<br>:<br>: |

**MEMORANDUM**

**Scott, J.**                                                                                                **July 21, 2023**

**I.    BACKGROUND**

On January 12, 2023, Antoine Spann, a convicted prisoner housed at SCI Pine Grove filed a handwritten "Affidavit" that the Clerk of Court opened as a *habeas corpus* matter and assigned to the Honorable John F. Murphy for review. *See Spann v. Supreme Ct. of Pennsylvania*, No. 23-237 (E.D. Pa.). Spann then filed a Motion for leave to amend his affidavit (*id.*, ECF No. 3). Because the nature of the relief he sought was unclear, in an Order filed on February 14, 2023 (*id.*, ECF No. 4), Judge Murphy directed the Clerk of Court to send Spann a form for filing a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, as well as a civil complaint form. Spann was told to review each form and related instructions and was advised that, if he sought to challenge a state court conviction or sentence he should return the *habeas corpus* form; if he sought to challenge the conditions of his confinement, he should return the civil complaint form. (*Id.*)

Spann returned the civil complaint form along with a motion to proceed *in forma pauperis*, as well as a prisoner trust fund account statement. (*Id.*, ECF Nos. 5, 6, 7.) In an Order filed on

April 24, 2023 (*id.*, ECF No. 8), the Clerk of Court was directed to open a new civil matter, to be classified as a prisoner's civil rights action and assigned to a judicial officer in accordance with the Court's procedures. (*Id.*) The Clerk was further directed to file Spann's application for *in forma pauperis* status in the new civil action and close Civil Action 23-237. (*Id.*) The newly opened civil action was assigned to the undersigned.

Spann's Complaint (ECF No. 3), now classified as a civil rights action brought pursuant to 42 U.S.C. § 1983, names eighteen Defendants: (1) the Supreme Court of Pennsylvania; (2) Phoenicia D.W. Wallace, the Deputy Prothonotary of the Pennsylvania Supreme Court; (3) SCI Forest Superintendent Michael D. Overmyer; (4) Timothy Holmes, Esq. of the Pennsylvania Department of Corrections ("DOC"); (5) former Pennsylvania Attorney General Josh Shapiro; (6) former SCI Forest Superintendent Derek R. Oberlander; (7) former Secretary of the Pennsylvania Department of Corrections John E. Wetzel; (8) Lee J. Estock of SCI Pine Grove; (9) Emily Finander, Esq. of the Defender Association of Philadelphia; (10) Jenn Winters of SCI Forest; (11) L. Reeher of SCI Forest; (12) Mrs. Peterson of SCI Forest; (13) SCI Pine Grove Security Captain E. Box; (14) L. Bradley of SCI Pine Grove; (15) J. Purcell of SCI Pine Grove; (16) Keri Moore of the Pennsylvania DOC Office of Inmate Grievance Appeals; (17) Laura Felps of the Office of Judicial Records of the Philadelphia Court of Common Pleas; and (18) Rebeca A. Rohrman of the Agency Open Records Office of the Pennsylvania Department of State.[1] As relief on his claims, Spann seeks immediate release from custody. (*Id.* at 9.) For the following reasons, the Court will grant Spann leave to proceed *in forma pauperis*, dismiss his civil rights claims, and direct Spann to file an amended petition in Civil Action 23-237 setting forth his grounds for *habeas* relief if he

---

[1] In the attached Order, the Clerk of Court will be directed to correct the docket to reflect that Spann has separately named the Supreme Court of Pennsylvania and the Deputy Prothonotary of the Pennsylvania Supreme Court. They are currently listed as a single Defendant.

seeks to be released from custody.

## II. FACTUAL ALLEGATIONS[2]

Spann's allegations are not entirely clear. He asserts that in 1999 he was incarcerated at the Philadelphia Detention Center but was then "turned over" to the Commonwealth of Pennsylvania when then Philadelphia District Attorney Lynn Abraham and her associate Barbara Christie filed an allegedly fake criminal complaint to unlawfully detain and kidnap him. (Compl. at 5.) He alleges that they altered documents to indicate he had a history of felony convictions of unlawful killings in Philadelphia where, he contends, there is no documentation of any kind, and no judgment of commitment was entered by a court. (*Id.*) He allegedly learned through a "right to know law office" that a written judgment of commitment or criminal record does not exist. (*Id.*) He alleges that this document is in the possession of the Department of Corrections and in the Philadelphia county court system. (*Id.*)

Spann asserts he was held in solitary confinement on and off for three and one-half years to stop him from filing legal paperwork, and he was thereafter transferred to different correctional institutions. (*Id.*) The Pennsylvania Supreme Court allegedly refused to follow procedures for a state writ of *habeas corpus*. (*Id.*) Spann alleges that the Pennsylvania Department of Corrections, the Governor's office, and the Philadelphia Court of Common Pleas would not respond to his claims when he filed a state *habeas corpus* petition in May 2018 with the Prothonotary in Philadelphia, and that he has been waiting five years without a ruling. (*Id.* at 5-6.) He appears to

---

[2] Unless otherwise provided, the factual allegations set forth in this Memorandum are taken from Spann's Complaint (ECF No. 3). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system. The spelling of many of the Defendants' names are not consistent in the Complaint. The Court will use the spellings found in the list of Defendants. (*Id.* at 1-2.)

allege that, rather than docket his submission as a state *habeas* petition, the Prothonotary opened a "civil action," for which he blames Defendants Michael D. Overmyer, former Attorney General Shapiro, and Laura Felps. (*Id.* at 6.) He alleges the Defendants thereby suspended the writ of *habeas corpus*. (*Id.*) In September 2022, Spann served the Pennsylvania Supreme Court with an "affidavit motion" about the mishandling of his *habeas corpus* petition by the Prothonotary's Office, claiming his criminal case was a "set up from the start" by Felps, Deputy Prothonotary of the Pennsylvania Supreme Court Phoenicia D.W. Wallace, Timothy Holmes, Esquire, a DOC attorney who represented Michael D. Overmyer, the DOC, and the Governor's Office "attorney of record." (*Id.*) He claims the civil action was then closed and the docket sealed with no legal opinion issued because the Commonwealth defaulted on the case. (*Id.* at 7.)

Spann next asserts that Defendant John E. Wetzel, the former Secretary of the DOC, in June 2012 "informed the Pennsylvania court system that the DOC will no longer accept a commitment from a county court if the appropriate documentation is not provided as part of the classification process" because this paperwork is mandated by law. (*Id.*) He alleges that, at the time, SCI Camp Hill received proper paperwork for only 30% of the inmates housed there. (*Id.*) He appears to contend that inmates like himself, for whom this paperwork was allegedly not received by the DOC, are "kidnapped" and characterizes this as a "billion-dollar human trafficking criminal enterprise" by the DOC. (*Id.*) Defendant Overmyer allegedly lost his job as Superintendent of SCI Forest, and Defendant Derek Oberlander lost his job as Superintendent as well. (*Id.*)

Thereafter, Spann was transferred to SCI Pine Grove where Defendant Lee J. Estock allegedly "started to play" with his legal paperwork for his state *habeas* case. (*Id.*) Spann filed grievances against SCI Pine Grove personnel including Defendants Grievance Coordinators J.

Purcell and Lee Bradley, Security Captain E. Box, Lee J. Estock, Grievance Office Secretary Keri Moore, Assistant Superintendent L. Reeher, and Mrs. Peterson of the business office, for interfering with his legal mail. (*Id.* 7-8.) Spann alleges this happened so the public will not know that he had been illegally incarcerated for 20 years, and then brought to a courtroom proceeding under the fictitious name of "Antoine Green" who had the same prisoner number. (*Id.* at 8.) He claims he was supposed to be released from custody by the efforts of Defendant Emily Finander of the Defender Association of Philadelphia in 2010 after serving a 20-year term imposed in 1990, but he was instead placed in solitary confinement before he could sign a required affidavit because Defendant Law Librarian Jenn Winter refused to notarize it. (*Id.*) Defendant Felps would then not file the paperwork so he could prosecute his *habeas* petition. (*Id.*)

A review of publicly available records indicates that Spann, whose aliases include "Antoine Green," was convicted in the Philadelphia Court of Common Pleas of murder on May 11, 1992 and sentenced to a term of life imprisonment. *See Commonwealth v. Spann*, CP-51-CR-110831-1991 (C.P. Philadelphia). Since that time, he has filed petitions pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA") in 2000, 2010, and 2012, as well as a pleading labeled a petition for writ of *habeas corpus* in 2018, that was treated as an additional PCRA petition. The first PCRA petition was dismissed on June 6, 2000 and the second petition, filed on June 14, 2010, was dismissed after a hearing on September 28, 2011. The third petition, filed on October 18, 2012, was dismissed on June 25, 2014. Spann appealed that dismissal, which was affirmed by the Pennsylvania Superior Court on May 26, 2015. The *habeas* petition, filed of record on June 1, 2018, was dismissed as untimely on October 6, 2020.[3] Spann's appeal of the October 6, 2020

---

[3] Spann's allegation that, rather than docket a submission as a state *habeas* petition, the Prothonotary opened a "civil action," appears to relate to his 2018 habeas petition, which the state court treated as another PCRA petition and, hence, filed it as a "civil action."

dismissal order was itself dismissed by the Pennsylvania Superior Court on April 15, 2021.

Spann has also filed prior *habeas corpus* petitions in this Court. In *Spann v. Erhardt*, No. 95-3045, Spann's petition was dismissed for failure to exhaust state remedies and no probable cause to appeal was found. A later motion pursuant to Federal Rule of Civil Procedure 60(b) was denied and the United States Court of Appeals for the Third Circuit refused to grant a certificate of appealability. In *Spann v. Sobina*, No. 01-5211, Spann's petition was dismissed with no certificate of appealability issued. Thereafter, the Third Circuit also denied him a certificate of appealability. Spann then filed *Spann v. Supreme Ct. of Pennsylvania*, No. 23-237 (E.D. Pa.), the precursor of this civil action.

### III. STANDARD OF REVIEW

The Court grants Spann leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Also, a complaint must be dismissed pursuant to § 1915(e)(2)(B)(i) if it is frivolous, that is, if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The use of the term "frivolous" in § 1915 "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Id.* Section 1915 accords judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless[,]" including claims that describe "fantastic or delusional scenarios[.]" *Id.* at 327. "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible[.]" *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). A claim is legally baseless if it is "based on an indisputably meritless

legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

"'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Spann is proceeding *pro se*, the Court construes the allegations of the Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013))).

## IV. DISCUSSION

Because, when offered the option of proceeding in Civil Action No. 23-237 as a *habeas corpus* proceeding or as a civil action, Spann used the form complaint provided for *pro se* litigants to file a civil rights action, the Court will screen Spann's allegations pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether he can state plausible claims under § 1983 against any of the Defendants.[4] "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

---

[4] In doing so, the Court acknowledges that the only relief Spann seeks for his "claims" is his immediate release from custody. That relief is not available in a § 1983 case, and that request for relief must be dismissed. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *Jaffery v. Atl. Cnty. Prosecutor's Office*, 695 F. App'x 38, 41-42 (3d Cir. 2017) (*per curiam*) ("[T]o the extent Jaffery seeks dismissal of the charges against him as a result of constitutional violations, such relief is only available through a writ of habeas corpus."). However, in an abundance of caution and because Spann was apparently confused about the nature of his choice between seeking *habeas* relief and seeking to assert civil rights claims, the Court will liberally construe Spann's Complaint as seeking money damages for his claims as well as release from custody and screen his claims accordingly.

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

### A. Claims against the Pennsylvania Supreme Court

States are not considered "persons" for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Also, the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). The Pennsylvania Supreme Court, as part of Pennsylvania's unified judicial system, shares in the Commonwealth's Eleventh Amendment immunity for money damages claims filed in federal court. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005). Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 Pa. Cons. Stat. § 8521(b). Spann's claims against the Pennsylvania Supreme Court are therefore dismissed because it is not a "person" liable under § 1983, and the claim is barred by the Eleventh Amendment.

### B. Claims involving Spann's state court *habeas* petition.

Spann contends that non-defendants the DOC, the Governor's office, and the Philadelphia Court of Common Pleas would not respond to his claims when he filed a state *habeas corpus* petition in May 2018 with the Prothonotary in Philadelphia, and that he has been waiting five years without a ruling. (Compl. at 5-6.) He appears to allege that, rather than docket his submission as a state *habeas* petition, the Prothonotary of the Court of Common Pleas opened a "civil action,"

for which he blames SCI Forest Superintendent Michael D. Overmyer, former Attorney General Shapiro, and Laura Felps of the Office of Judicial Records of the Philadelphia Court of Common Pleas. (*Id*. at 6.) He alleges the Defendants thereby suspended the writ of *habeas corpus*. (*Id*.) In September 2022, Spann served the Pennsylvania Supreme Court with an "affidavit motion" about the mishandling of his *habeas corpus* petition by the Prothonotary's Office, claiming his criminal case was a "set up from the start" by Defendant Felps; Phoenicia D.W. Wallace, the Deputy Prothonotary of the Pennsylvania Supreme Court; Timothy Holmes, Esquire, a DOC attorney who represented Michael D. Overmyer; and non-defendants the DOC, and a Governor's Office "attorney of record." (*Id*.) He claims the civil action was then closed and the docket sealed with no legal opinion issued because the Commonwealth defaulted on the case. (*Id*. at 7.)

The Court understands Spann to be asserting a due process violation arising from the manner in which his state *habeas* petition was processed. Three kinds of § 1983 claims may be brought under the Due Process Clause of the Fourteenth Amendment. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). First, a plaintiff may bring suit under § 1983 for a violation of his specific rights as guaranteed by the Bill of Rights. *Id.* Second, a plaintiff may assert a Fourteenth Amendment claim under the "procedural" aspect of the Due Process Clause, which guarantees fair procedure for the deprivation of a constitutionally protected interest in life, liberty, or property. *Id.* Third, a plaintiff may assert a claim under the "substantive" prong of the Due Process Clause, which bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them. *Id.* (quoting *Daniels v. Williams,* 474 U.S. at 331)).

Spann's claim is properly characterized as a procedural due process claim. The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms,

typically the right to notice and an opportunity to be heard before the government can deprive an individual of a liberty or property interest. To establish a procedural due process violation, a person must first demonstrate that he has been deprived of a constitutionally protected property or liberty interest. *Daniels,* 474 U.S. at 339; *Renchenski v. Williams,* 622 F.3d 315, 325 (3d Cir. 2010). Only upon finding that a protected interest is asserted does a court consider the constitutional sufficiency of the procedures associated with the interest. If a liberty or property interest is found, the next step in the due process inquiry is to determine what process is due. Due process is not a technical conception with a fixed content unrelated to time, place, and circumstance. *Gilbert v. Homar,* 520 U.S. 924, 930 (1997). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).

Spann's liberty-based due process claim allegedly arising from the procedure by which his *habeas* petition was adjudicated in the state courts fails to state a plausible constitutional claim. First, public records from Spann's state court criminal docket[5] establish that Spann received the process that was due because his *habeas* petition was actually adjudicated in the Court of Common Pleas and, when dismissed, appealed to the Pennsylvania Superior Court, which also dismissed Spann's claims. His allegation that the petition was "closed" and "the docket sealed" with no legal opinion, is factually frivolous.

Second, to the extent Spann appears to base a claim on his assertion that the petition was

---

[5] The Court may consider public records when conducting a screening under § 1915. *See Castro-Mota v. Smithson,* No. 20-940, 2020 WL 3104775, at *1 (E.D. Pa. June 11, 2020) (citing *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006)). The Court may also take judicial notice of the content of a record of a prior court proceeding. *See In re Ellerbe,* No. 21-3003, 2022 WL 444261, at *1 (3d Cir. Feb. 14, 2022) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 416 n.3 (3d Cir. 1988) (holding that court may take judicial notice of the record from previous court proceedings)).

opened as a "civil action," rather than a *habeas* action, he has failed to state a plausible due process claim. Whether SCI Forest official Michael Overmyer, former Attorney General Shapiro, Laura Felps of the Office of Judicial Records, Deputy Prothonotary of the Pennsylvania Supreme Court Phoenicia D.W. Wallace, DOC attorney Timothy Holmes, or the Governor's Office "attorney of record" were in any way personally involved in the processing of that petition in the Philadelphia Court of Common Pleas as a "civil action" rather than a *habeas corpus* matter, *see Rode*, 845 F.2d at 1207, the allegation fails to state a plausible claim. The distinction Spann seeks to create between the filing of a *habeas* petition and the filing of a "civil action" fails to state a plausible due process violation since, under Pennsylvania law, the statutory procedures of the PCRA, which Spann clearly received, have supplanted common law *habeas corpus* as the means by which one convicted in Pennsylvania may file a post-conviction collateral attack. *See* 42 Pa. Cons. Stat. Ann. § 9542 (providing that the PCRA is the sole means of obtaining collateral relief from convictions, encompassing and replacing all other forms of relief, including *habeas corpus* and *coram nobis*). Because Spann received the process for which he was due under the PCRA when he filed his pleading, this claim is dismissed with prejudice for failure to state a claim upon which relief may be granted.

      C.     **First Amendment Claims – Legal Mail and Access to Courts**

Spann alleges he was held in solitary confinement on and off for three and one-half years to stop him from filing legal paperwork, and he was thereafter transferred to different correctional institutions. When he was transferred to SCI Pine Grove, Defendant Lee J. Estock allegedly "started to play" with his legal paperwork for his state *habeas* case. Spann filed grievances against SCI Pine Grove personnel including Defendants Grievance Coordinators J. Purcell and Lee Bradley, Security Captain E. Box, Lee J. Estock, Grievance Office Secretary Keri Moore, Assistant

Superintendent L. Reeher, and Mrs. Peterson of the business office, for interfering with his legal mail. The Court understands Spann to be asserting a violation of his First Amendment rights to send and receive legal mail and to access the courts.[6]

The United States Court of Appeals for the Third Circuit has explained that prisoners "do not forfeit their First Amendment right to use of the mails" and that a "pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech." *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *abrogated in part by Oliver v. Fauver*, 118 F.3d 175 (3d Cir. 1997); *see also Taylor v. Oney*, 196 F. App'x. 126, 128 (3d Cir. 2006) (reaffirming holding in *Bieregu* that "prison officials impinge upon the First Amendment rights of prisoners when they open prisoners' legal mail outside the presence of the addressee prisoner"). A First Amendment claim for interference with a prisoner's legal mail has been recognized where a plaintiff alleges that the interference was done according to a "pattern and practice." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) ("A state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate . . . impinges upon the inmate's right to freedom of speech."). Notably, actions taken pursuant to a pattern or practice do not need to be done pursuant to the existence of a "blanket policy" for the

---

[6] To the extent that Spann's allegations that he filed grievances against SCI Pine Grove personnel was intended to raise a separate claim about the handling of those grievances, that claim is dismissed with prejudice. Claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*). Also, a prison official's involvement in the grievance process, alone, is not actionable under § 1983. *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants [Superintendent] Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue].").

claim to be plausible. *See, e.g. id.* (distinguishing between "a pattern and practice" and an "explicit policy").

The assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen also has been recognized as stating a First Amendment claim. *Victorious v. Lanigan*, No. 15-6949, 2016 WL 2981759, at *4 (D.N.J. May 23, 2016) (citing *McLeod v. Monmouth Cnty. Corr. Inst.*, No. 05-4710, 2006 WL 572346, at *3 (D.N.J. Mar. 8, 2006)). Prisoners need not allege or prove any "actual injury" beyond direct injury to their First Amendment right to use the mails. *Taylor*, 196 F. App'x at 128. However, courts have found that, because the claim must be based upon a "pattern or practice," mere isolated incidents of interference without evidence of an improper motive, are insufficient to establish a First Amendment violation. *See, e.g., Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) (*per curiam*) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a first Amendment violation."); *Beese v. Liebe*, 51 F. App'x. 979, 981 (7th Cir. 2002) (dismissing First Amendment Claim based on allegations that four pieces of legal mail had been opened outside of inmate's presence, since the inmate presented no evidence that his legal mail had been intentionally opened, and where the inmate merely speculated that the prison official intended to do so); *Gardner v. Howard*, 109 F.3d 427, 420-31 (8th Cir. 1997).

While Spann generally alleges interference with his legal mail while at SCI Pine Grove, he makes no allegation that the interference was part of a pattern and practice. Without at least a modicum of factual specificity on this point, the Court must conclude that he has failed to state a plausible claim of interference with legal mail under the First Amendment. *See Taylor*, 196 F. App'x at 128 (stating that the inmate must allege the "personal involvement on the part of the

13

Defendants in the alleged pattern and practice of opening his mail"). The Court cannot, however, state that Spann can never successfully state a plausible First Amendment claim. Accordingly, this claim will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and Spann will be granted leave to file an amended complaint if can cure the defects in this claim identified by the Court.

Unlike interference with legal mail, "[a] prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415. "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id.* Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (*per curiam*).

Spann's access-to-the-courts claims are not plausible since he fails to allege an actual injury. First, while he alleges that the Defendants interfered with his attempt to file a state *habeas*

proceeding by placing him in solitary confinement, by moving him to different institutions, by refusing to notarize documents, and by refusing to file documents, the state court record establishes that Spann's pleading was filed with the Court of Common Pleas. Moreover, his allegation that Defendant Estock "started to play" with his legal paperwork for his state *habeas* case is conclusory and undeveloped and fails to specify whether it relates to the legal mail claim or to his ability to file the *habeas*. Because Spann's *habeas* petition was actually filed in the state court and thereafter dismissed in due course, he cannot assert that the Defendants' action allegedly preventing him from filing the petition caused him to lose a "nonfrivolous" and "arguable" claim. His access-to-courts claim is dismissed with prejudice.[7]

### D. "Kidnapping" claims

Spann alleges that Defendant John E. Wetzel, the former Secretary of the DOC, in June 2012 informed the Pennsylvania court system that the DOC would no longer accept a commitment from a county court if appropriate documentation was not provided as part of the classification process because this paperwork was mandated by law. Spann alleges that because his paperwork was improper, he was "kidnapped" as part of human trafficking criminal enterprise by the DOC. He alleges that Defendant Overmyer allegedly lost his job as Superintendent of SCI Forest, and Defendant Derek Oberlander lost his job as a Superintendent as well. This claim must be dismissed

---

[7] Spann has named Defendant Finander of the Defender Association of Philadelphia and mentions, as part of his access-to-courts allegations, claiming that in 2010 Finander was supposed to get him released from custody after serving a 20-year term. Any claim against Defendant Finander is dismissed with prejudice because she is not a "state actor" as that term is used in § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (holding that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding" (footnote omitted)); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."); *see also Clark v. Punshon*, 516 F. App'x 97, 99 (3d Cir. 2013) (*per curiam*) (noting that a court-appointed attorney is not a state actor for purposes of § 1983).

with prejudice. First, Spann does not allege that Wetzel, Overmyer, or Oberlander were personally involved in his alleged "kidnapping." More importantly, since public records confirm that Spann was convicted of murder and sentenced to serve a life term in the custody of the DOC, any claim he has been kidnapped by the Commonwealth is frivolous.

## V. CONCLUSION

For the reasons stated in this Memorandum, Spann's claims brought pursuant to § 1983 must be dismissed in their entirety. His claim against the Pennsylvania Supreme Court, his due process claim arising from the manner in which his state *habeas* petition was processed, any claim based on his filing of grievances, his access-to-the-courts claim, his claim against Defendant Finander of the Defender Association of Philadelphia, and his claim that he has been kidnapped are dismissed with prejudice. His First Amendment claim based on interference with his legal mail will be dismissed without prejudice. Spann will be permitted to file an amended complaint limited to seeking money damages on this First Amendment legal mail claim if he is capable of curing the defects the Court has identified in the claim.

Spann's request for relief in the form of release from custody is also dismissed. Spann may pursue this relief by filing a motion to reopen and an amended *habeas corpus* petition in *Spann v. Supreme Ct. of Pennsylvania*, No. 23-237 (E.D. Pa.). An Order of dismissal will be separately entered with instruction on amendment in this case and providing Spann the form necessary to file an amended § 2254 habeas petition.[8]

---

[8] The Court expresses no opinion on the merits of any *habeas* claim Spann may seek to assert.